UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHUCK RUSH,

               Plaintiff,

v.

HILLSIDE BUFFALO, LLC, also known as The
Track at Hillside Buffalo, DANIEL J.
HUTCHINSON, JM MOTORSPORTS, and NICK
JOHNSTON,

               Defendants.
_____

**DECISION AND ORDER**

1:18-CV-00653 EAW

## INTRODUCTION

Plaintiff Chuck Rush ("Plaintiff") commenced this *pro se* action on June 13, 2018, alleging that Defendants violated the Lanham Act, 15 U.S.C. § 1051 *et seq.*, committed larceny under the Uniform Code of Military Justice, 10 U.S.C. § 921, and otherwise converted his property rights by advertising his registered trademark, or a variation thereof, and profiting from this misappropriation. (Dkt. 1). Plaintiff has also filed a motion for a temporary restraining order, a motion for a preliminary injunction, and a motion for an expedited hearing on his preliminary injunction application. (Dkt. 2; Dkt. 4). For the following reasons, Plaintiff's motion for a temporary restraining order is denied. The Court sets a status conference for Thursday, July 5, 2018, at 3:00 P.M., at the United States Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350. All parties and/or their counsel must appear at that status conference.

## FACTUAL BACKGROUND[1]

Plaintiff avers that he owns and operates "Crash-A-Rama," which he describes as "'[t]he wildest show on wheels,' featuring men and women running old junk cars in exciting and entertaining events." (Dkt. 2 at 3-4). Plaintiff further avers that he is the sole owner of a registered federal trademark for the name, "Crash-A-Rama." (*Id.* at 4; *see* Dkt. 1 at 16-25 (exhibits to Plaintiff's complaint)). Plaintiff has operated Crash-A-Rama at the Holland International Speedway (the "Speedway") in Holland, New York for eighteen years. (Dkt. 2 at 3-4). However, Defendants recently acquired the Speedway, and they now operate that location under the name "Hillside Buffalo, LLC a/k/a The Track at Hillside Buffalo." (*Id.* at 4).

Plaintiff avers that on or about May 30, 2018, Defendants "knowingly and purposefully converted [his] business and federal trademark . . . into 'Crash-O-Rama'; all for [D]efendants' exclusive profit and gain and to the detriment of [P]laintiff[.]" (*Id.*). Defendants have advertised a "Crash-O-Rama" event to take place on Saturday, June 16, 2018, at the Speedway, and appear to have done so in conjunction with the sale of tickets both online and in print. (Dkt. 2 at 4-6; *see* Dkt. 1 at 33, 37, 41-46 (exhibits to Plaintiff's complaint)). Plaintiff avers that this "slight and nearly unnoticeable change" to his registered trademark was intended to capitalize upon Plaintiff's "good reputation, unique auto racing, and successful business history and earnings" by confusing and "trick[ing] the

---

[1] The following facts are taken from Plaintiff's affidavit in support of his motion for a temporary restraining order unless otherwise indicated. (Dkt. 2 at 3-7).

public and consumers . . . to sell tickets and generate money only to [Defendants'] benefit." (Dkt. 2 at 4-5).

The next day, Plaintiff notified Defendants by email that they had infringed upon his registered trademark, and he demanded that they "cease and desist" any further misappropriation of the "Crash-A-Rama" name. (*Id.* at 5). In his complaint, Plaintiff alleges that he sent a second email to Defendants on June 13, 2018, rendering essentially the same notice described in the first email. (Dkt. 1 at 7, 52). Plaintiff avers that his emails have not halted Defendants' continued use of his registered trademark, and thus, he seeks a temporary restraining order to prevent Defendants from holding the "Crash-O-Rama" event on Saturday, June 16, 2018. (*See* Dkt. 2 at 5-6).[2]

## DISCUSSION

**I.    Subject Matter Jurisdiction**

    **A.    Diversity Jurisdiction**

"Federal district courts are required to test their subject matter jurisdiction *sua sponte*." *Sabatino v. St. Barnabas Med. Ctr.*, No. 03 CV 7445 (CSH), 2004 WL 2413940, at *2 (S.D.N.Y. Oct. 28, 2004). "Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "'[C]itizens of different States' means that

---

[2] It should be noted that Plaintiff is proceeding *pro se*, and that he commenced this action a mere two days ago, requesting the enjoinment of an event scheduled to take place tomorrow, June 16, 2018. (Dkt. 1; Dkt. 2; Dkt. 4). Since Plaintiff's motion required an expeditious resolution, the Court has not had the benefit of reviewing any responsive arguments from Defendants relating to any of Plaintiff's contentions. Indeed, Defendants have not yet appeared in this action.

there must be complete diversity, i.e., that each plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009); *see Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show 'complete diversity'—that is, that it does not share citizenship with any defendant."). "A person's citizenship for purposes of diversity is based upon his domicile." *Ceglia*, 772 F. Supp. 2d at 455.

Plaintiff alleges that he is a citizen of the State of Florida, and that Defendants are all citizens of the State of New York for diversity purposes. (Dkt. 1 at 3-5). In doing so, Plaintiff alleges that Hillside Buffalo, LLC is a corporation that is incorporated under the laws of the State of New York, and that it maintains its principal place of business in New York. (*Id.* at 4). However, Hillside Buffalo, LLC is a limited liability company.

"In general, the citizenship of a limited liability company is determined by the citizenship of each of its members." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016); *see Nationstar Mortg. LLC v. Pignataro*, No. 1: 15-CV-1041 (LEK/DJS), 2016 WL 3647876, at *1 (N.D.N.Y. July 1, 2016) ("A limited liability company takes the citizenship of its members." (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012))). Plaintiff has failed to identify any of Hillside Buffalo, LLC's members, let alone allege their citizenship for diversity purposes. *See Courtyard Apartments Prop. 1, LLC v. Rosenblum*, No. 17-CV-2909 (DRH)(SIL), 2018 WL 1611386, at *2 (E.D.N.Y. Apr. 3, 2018) ("Plaintiffs have failed to even allege the members, let alone the members' citizenship, of certain of the

Plaintiffs. . . ."). "Citizenship of all members must be known to insure that complete diversity exists in this action." *Caro v. Fid. Brokerage Servs., LLC*, No. 3:12-CV-1066 (CSH), 2013 WL 3929708, at *4 (D. Conn. July 26, 2013). The absence of any such allegations completely compromises Plaintiff's assertion of federal diversity jurisdiction. *See PMX Agency LLC v. Blackstreet Capital Holdings, LLC*, No. 1:16-CV-03849 (ALC), 2017 WL 3605380, at *1 (S.D.N.Y. Aug. 21, 2017) (finding the plaintiff's complaint to be "deficient" in the absence of allegations regarding the defendant's members' citizenship).

Therefore, although Plaintiff seeks to invoke principles of diversity of citizenship, he has failed to properly allege a basis for diversity jurisdiction.

B.     **Federal Question Jurisdiction**

Since Plaintiff has failed to allege diversity jurisdiction, this Court has subject matter jurisdiction over this action only if Plaintiff has sufficiently invoked the Lanham Act.[3] "A dispute does not invoke federal jurisdiction simply because the plaintiff seeks a

---

[3] To the extent that Plaintiff also states that Defendants committed an act of larceny pursuant to 10 U.S.C. § 921 (Dkt. 1 at 3), this allegation does not invoke federal question jurisdiction. That statute falls within the punitive articles of the Uniform Code of Military Justice, and thus, it pertains to military justice law, which is wholly inapplicable to this case. Indeed, in cases where a private citizen seeks to enforce or prosecute a criminal statute, courts have routinely found that the citizen does not have standing to do so. *See, e.g., Salvador v. State of New York*, No. 12 Civ. 7299 (LAP), 2013 WL 12080930, at *1 (S.D.N.Y. Feb. 19, 2013) ("[A] private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981))), *aff'd sub nom. Salvador v. New York*, 550 F. App'x 56 (2d Cir. 2014); *Truong v. Litman*, No. 06 Civ. 1431 (SHS), 2006 WL 3408573, at *4 (S.D.N.Y. Nov. 22, 2006) (stating that "private citizens cannot generally enforce the U.S. Criminal Code"), *aff'd*, 312 F. App'x 377 (2d Cir. 2009). Here, Plaintiff does not point to any provision in the Uniform Code of Military Justice that creates a private cause of action to enforce the punitive articles

remedy that happens to be available in a federal statute. A violation of the federal law is a necessary predicate for claiming the remedies of the Lanham Act." *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 618 (4th Cir. 1997). The Lanham Act prohibits a person from the

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). The statute defines the term "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. More specifically,

> a mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

*Id.*

"It is well settled that the scope of 'in commerce' as a jurisdictional predicate of the Lanham Act is broad and has a sweeping reach." *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998). Courts have frequently determined that the "in

---

enacted therein, and this Court has not found any. *See, e.g., Buczek v. Bruce*, No. 09-CV-1129S, 2011 WL 1899769, at *5 (W.D.N.Y. May 19, 2011) (stating that the plaintiff "does not allege that any of the criminal statutes he cites create a private right of action, and indeed, they do not"). Therefore, Plaintiff cannot invoke this Court's federal question jurisdiction by simply inserting an inapplicable statute within his complaint.

commerce" standard is satisfied by messages or advertisements sent posted over the Internet. *See, e.g., World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 528-29 (S.D.N.Y. 2001) (stating that the "defendants' use of the Internet also satisfies the Lanham Act's 'in commerce' requirement" (citations omitted)); *Bucci*, 1997 WL 133313, at *3 ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement."); *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1239-40 (N.D. Ill. 1996) ("Because Internet communications transmit instantaneously on a worldwide basis there is little question that the 'in commerce' requirement would be met in a typical Internet message, be it trademark infringement or false advertising." (quoting 1 Gilson, Trademark Prot. & Prac. § 5.11[2], at 5-234 (1996))); *see also Pump Wear, Inc. v. Insulin Pump Packs For You, LLC*, No. 1:08-CV-570, 2008 WL 11355284, at *1 (N.D.N.Y. Sept. 23, 2008) (stating that the plaintiff "has used the trademark 'Pump Pak' in commerce" and "operates a website at the Internet address www.pumpwearinc.com where its products are sold").

Although Plaintiff's allegations invoking the Lanham Act are somewhat unclear and not wholly fleshed out, in reviewing the Complaint as a whole the Court preliminarily finds that it has subject matter jurisdiction to entertain this action on the basis of federal question jurisdiction. Here, Plaintiff alleges that he has a registered federal trademark in the name "Crash-A-Rama," and that Defendants have infringed upon this property right by using the name "Crash-O-Rama" in the advertisement, promotion, and sale of their tickets for this event. (Dkt. 1 at 7). In addition, the "Crash-O-Rama" event is scheduled to be held at the same location as the previous "Crash-A-Rama" events, which would likely give rise to at

least some consumer confusion. (*See id.*). Plaintiff also specifically alleges that Defendants have converted his trademark to "intentionally confuse[] and trick[] the public and consumers . . . to sell tickets and generate money" based upon Plaintiff's own "good reputation and successful business history and earnings." (*Id.*). Furthermore, Plaintiff has attached several exhibits to his Complaint that display information conveyed by defendants JM Motorsports and Hillside Buffalo, LLC, which use the "Crash-O-Rama" name in the advertisement and sale of tickets for this event over the Internet. (*See, e.g., id.* at 33, 37, 41). These allegations suggest that Plaintiff's trademark is being "use[d] in commerce" for the sale or advertisement of services, and in a deceptive manner that may create consumer confusion. *See* 15 U.S.C. § 1114(1)(a). Therefore, although Plaintiff's allegations pertaining to the violation of the Lanham Act are not artfully drafted, the Court preliminarily finds that he has properly raised the applicability of the Lanham Act in invoking federal question jurisdiction. This finding does not prevent Defendants from seeking dismissal on jurisdictional grounds if they believe such a motion is appropriate.

The Court now will turn to the merits of Plaintiff's motion for a temporary restraining order.

## II. <u>Plaintiff's Motion for a Temporary Restraining Order</u>

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are 'never awarded as of right,' or 'as a routine matter.'" *Whitfield v. Lopez*, No. 15-CV-4827 (DLI) (LB), 2015 WL 6128866, at *2 (E.D.N.Y. Oct. 16, 2015) (citations omitted). "In the Second Circuit, where a party seeks preliminary injunctive relief in an action alleging trademark infringement under the Lanham Act, courts apply the

four-factor test set forth by the Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 390, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)." *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 226 (W.D.N.Y. 2012). Under this test,

> a district court must determine that a plaintiff has shown: (1) a likelihood of success on the merits; (2) that absent an injunction [the p]laintiff is likely to suffer irreparable injury that cannot be remedied with monetary damages; (3) that the balance of hardships tips in favor of [the p]laintiff; and (4) that "the public interest would not be disserved" by the issuance of an injunction.

*Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 327 (S.D.N.Y. 2011) (citing *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). Furthermore, this four-part test is also applied by courts in reviewing a request for a temporary restraining order because, "[i]n the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction." *Wik v. City of Rochester*, No. 07-CV-6541-CJS, 2008 WL 11251593, at *1 (W.D.N.Y. Nov. 6, 2008); *see 1077 Madison St., LLC v. Mar.*, No. 14-CV-4253 (JMA)(PK), 2017 WL 6387616, at *2 (E.D.N.Y. Aug. 22, 2017) ("In this Circuit, the standard for entry of a temporary restraining order is the same as for a preliminary injunction."); *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (same and collecting cases)); *see also Comprehensive Cmty. Dev. Corp. v. Sebelius*, No. 12 Civ. 0776 (PAE), 2012 WL 738185, at *5 (S.D.N.Y. Mar. 7, 2012) ("[A] plaintiff seeking a temporary restraining order 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" (citation omitted)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted). "Previously, irreparable harm was presumed in trademark infringement actions in the Second Circuit where a sufficient showing of the likelihood of confusion had been made." *NYP Holdings v. N.Y. Post Pub. Inc.*, 63 F. Supp. 3d 328, 335 n.5 (S.D.N.Y. 2014). However, "[u]nder *Salinger*, courts may no longer simply presume irreparable harm; rather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (citing *Salinger*, 607 F.3d at 82). "Courts must pay 'particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury.'" *Id.* at 285 (quoting *Salinger*, 607 F.3d at 80).

"An irreparable injury is one that cannot be redressed through a monetary award. Where monetary damages are adequate compensation, a preliminary injunction[, or a temporary restraining order,] will not issue. Monetary loss will not suffice unless the movant shows damage that cannot be rectified by financial compensation." *Goldblatt v. Englander Commc'ns, L.L.C.*, 431 F. Supp. 2d 420, 424-25 (S.D.N.Y. 2006) (citations omitted).

In support of his motion for a temporary restraining order, Plaintiff has provided only his own sworn affidavit. (Dkt. 2 at 3-7). Although Plaintiff avers that "[i]mmediate and irreparable injury, loss, or damage will result to [him] . . . and [that] monetary damages at a later time will not adequately compensate [him] for injuries and damages [he] has

sustained and is sustaining as a result" of the scheduled Crash-O-Rama event (Dkt. 2 at ¶ 16), he does not support this conclusory averment with any proof that monetary damages would, in fact, not offer a sufficient remedy in this situation. Instead, Plaintiff simply avers that if a temporary restraining order is not issued, "his personal reputation, livelihood, financial and personal wellbeing, and protected trademark 'Crash-A-Rama' will be permanently and irreparably injured." (*Id.* at ¶ 20).

It is true that "[i]rreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *NYC Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (quoting *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985)). "However, conclusory statements of loss of reputation will not justify an irreparable harm finding." *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10 Civ. 3314 (RWS), 2015 WL 4033019, at *11 (S.D.N.Y. June 29, 2015); *see M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91, 105 (E.D.N.Y. 2003) (stating that the plaintiff "presented no evidence of a risk of loss of reputation, lack of quality control, inability of [the defendant] to pay damages if liable, or other tangible harm," and finding insufficient the plaintiff's "conclusory statement" that it would "suffer immeasurable and irreparable injury" should the purported trademark infringement continue without injunctive relief); *AFM Corp. v. Therma Panel Homes Corp.*, No. 00-CV-0055E(SC), 2001 WL 118568, at *4 (W.D.N.Y. Feb. 2, 2001) (noting that the defendants' "conclusory statement that '[a]ny judgment

entered against the [d]efendants will cause [them] to suffer irreparable harm and damage'" did not establish irreparable harm).

Notably, Plaintiff does, in fact, seek damages to compensate him for many of the injuries he claims he has or will suffer as a result of Defendants' actions. (Dkt. 1 at 5). In addition, at least at this point in time, Plaintiff has only indicated that Defendants have misused his trademark for a single confined event. Under these circumstances, it is unclear why monetary damages could not be assessed based upon the number and price of the tickets and concessions sold, the number of patrons diverted from Plaintiff, or any other revenue grossed as a result of this single "Crash-O-Rama" event. *See Ann Clark, Ltd. v. R&M Int'l, Corp.*, No. 1:14-CV-143, 2014 WL 7392026, at *3 (D. Vt. 2014) (finding it "unclear" why monetary damages would not suffice to remedy the diverted sales, and the loss of revenue, profit, and market share alleged by the plaintiff); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("Generally, where we have found no irreparable harm, the alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions."); *see generally Goldblatt*, 431 F. Supp. 2d at 425 ("Monetary loss will not suffice unless the movant shows damage that cannot be rectified by financial compensation."). As such, even if Plaintiff could show that the use of the variant, "Crash-O-Rama," would create some consumer confusion when used for an event held at the same location as the "Crash-A-Rama," "that showing would not *per se* establish irreparable harm." *Ann Clark, Ltd.*, 2014 WL 7392026, at *3.

As the Second Circuit has explained, courts must eschew adopting "a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm[, but] . . . must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits." *Salinger*, 607 F.3d at 80. Giving "particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate'" for Plaintiff's injuries, *id.* (quoting *eBay Inc.*, 547 U.S. at 391), the Court finds that the evidence does not support a finding of irreparable harm because, at this stage, Plaintiff has not demonstrated that monetary damages would be an inadequate remedy to compensate him for any injury inflicted by Defendants should he prevail on the merits of his claim. Indeed, "[t]he law in this Circuit requires that irreparable harm be likely, not merely possible." *Curry v. City of New York*, No. 10-CV-5847 (SLT) (LB), 2010 WL 5391472, at *3 (E.D.N.Y. Dec. 22, 2010). In failing to supply evidence of the loss of reputation or good will beyond his own conclusory averments, Plaintiff has not made a sufficient showing that irreparable harm is likely at this point in this action. *See Alzheimer's Found. of Am., Inc.*, 2015 WL 4033019, at *11; *M & G Elecs. Sales Corp.*, 250 F. Supp. 2d at 105; *AFM Corp.*, 2001 WL 118568, at *4. Having determined that Plaintiff has not established the existence of irreparable harm, the Court does not address the other factors necessary for the issuance of a temporary restraining order. *See Walters v. T & D Towing Corp.*, No. 17-CV-0681(JS)(AKT), 2017 WL 1184169, at *4 (E.D.N.Y. Mar. 29, 2017) ("Because [the p]laintiff has not demonstrated that she will suffer irreparable harm absent injunctive relief, the Court need not consider whether there is a likelihood of success on the merits of her claims."); *Nat'l Audubon Soc., Inc. v. U.S. Fish*

*& Wildlife Serv.*, 55 F. Supp. 3d 316, 365 n.21 (E.D.N.Y. 2014) ("Since [the] plaintiff has not demonstrated a likelihood of success on the merits of any of its claims against [the] defendants, it is unnecessary to consider the 'irreparable injury' and 'public interest' prongs of a preliminary injunction motion.").

Accordingly, the Court denies Plaintiff's motion for a temporary restraining order.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order (Dkt. 2) is denied. However, the Court reserves decision on Plaintiff's motion for a preliminary injunction. The motion for a preliminary injunction will be decided after briefing by Defendants and, if necessary, an evidentiary hearing and/or oral argument. A status conference is hereby scheduled to take place on <u>Thursday, July 5, 2018, at 3:00 P.M.</u>, in the United States Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350. <u>Plaintiff is directed to serve a copy of this Decision and Order by personal delivery and regular mail on all Defendants, and file proof of service of the same, on or before June 25, 2018. All parties and/or their counsel must appear before the Court as scheduled on July 5, 2018, and the failure to do so risks the potential imposition of sanctions.</u>

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

DATED:   June 15, 2018
         Rochester, New York